30 C.C.P.A.(Patents)

## In re SWEET.

### Patent Appeal No. 4716.

Court of Customs and Patent Appeals.

June 1, 1943.

E. Clarkson Seward, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 13 to 16, inclusive, in appellant's application for a patent for an alleged invention relating to an inking mechanism for high speed printing presses.

Claims 13 and 16 are illustrative of the appealed claims. They read:

"13. An inking mechanism including an ink supply roll, two ink feed rollers, a ductor roller, means for moving it into contact with the ink supply roll on one stroke and into simultaneous contact with the two ink feed rollers on the opposite stroke, two ink distribution rollers in contact with their respective ink feed rollers, and an ink drum in contact with the two ink distribution rollers."

"16. An inking mechanism including an ink supply roll, two ink feed rollers, a ductor roller, means for moving it into contact with the ink supply roll on one stroke and into simultaneous contact with the two ink feed rollers on the opposite stroke, two ink distribution rollers in contact with their respective ink feed rollers, an ink drum in contact with the two ink distribution rollers, and a train of gears operatively connecting the ink drum with the said ink feed rollers."

The references are:

Barber, 1,284,213, Nov. 12, 1918;
Walser et al., 1,376,982, May 3, 1921;
Kranz, 1,946,217, February 6, 1934;
Harrold et al., 2,162,812, June 20, 1939.

As will be observed from the quoted claims, appellant's inking mechanism is designed to transfer ink from an ink fountain to an ink drum, and comprises a "ductor roller" for taking ink from an ink supply or fountain roller and transferring it to a pair of "ink feed rollers," and means for transferring the ink from the feed rollers to a pair of distribution rollers and thence to an ink drum. Although appellant's application discloses mechanism for transferring ink from the *ink drum to a printing cylinder,* the claims do not call for such mechanism.

In his statement to the Board of Appeals, the Primary Examiner, in addition to explaining why he thought the appealed claims were not patentable over the cited prior art, said: "It is pointed out that the claims are not directed to the entire mechanism disclosed." That is to say, the claims, as hereinbefore noted, do not call for the mechanism which transfers ink from the ink drum to the printing cylinder.

In their brief before the Board of Appeals, counsel for appellant requested that the claims be allowed in their present form, or "in such more complete form as may be suggested by the Examiner as indicated in his Statement."

In its original decision affirming the decision of the Primary Examiner, the Board of Appeals stated that "As indicated by the examiner, none of the claims set forth how the ink is applied to the printing roller."

In a request for reconsideration, counsel for appellant referred to the quoted excerpt from the board's decision, and requested that the board permit appellant to amend claim 13 so as to include therein the mechanism disclosed in his application for transferring ink from the ink drum to the printing cylinder.

The Board of Appeals denied appellant's request for reconsideration of its decision, and stated that it was not proper for it to consider claims which had not been before the Primary Examiner. In support of its position, the board cited the case of Ex parte Moore, 1923 C.D. 13.

Thereafter, appellant attempted to amend his application by cancelling all of the appealed claims and inserting an amended claim which, in addition to the structure defined in the claims here on appeal, covered apparatus for transferring ink from the ink drum to the printing cylinder.

In a decision refusing to enter appellant's proposed amendment, the Primary Examiner stated that he did not intend in his statement to the board "to imply that the claims were considered incomplete or that the inclusion in the appealed claims of any or all of the other elements disclosed by applicant would render the claims patentable, or that claims drawn in any other manner would be considered allowable."

Appellant's reasons of appeal in this court contain the claim that the board erred in holding that it was not proper for it to consider the amended claim presented to it.

Counsel for appellant here contends that the board had authority under rule 139 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, to permit the substitution of the amended claim, and that it erred in refusing to exercise that authority.

So far as pertinent, rule 139 provides:

" * * * Should it [the Board of Appeals] discover any apparent grounds not involved in the appeal for granting or refusing letters patent in the form claimed, or in any other form, it shall include in its

decision a statement to that effect with its reasons for so holding.

\*　　\*　　\*　　\*　　\*

"Should the decision of the board of appeals include a statement that the patent may be granted in amended form, applicant shall have the right to amend in conformity with such statement, which shall be binding on the primary examiner in the absence of new references or grounds of rejection."

In support of his contention, counsel for appellant also cited the cases of Ex parte Hart, 14 U.S.P.Q. 57; Ex parte Lilienfeld, 17 U.S.P.Q. 392, 395; Ex parte Gaspar, 31 U.S.P.Q. 396, 397; Ex parte Billing, 44 U.S.P.Q. 316, 317.

In each of those cases, the Board of Appeals permitted the entering of amended claims which had not been before the Primary Examiner.

Rule 68 of the Rules of Practice in the United States Patent Office provides, inter alia, that—"No amendment can be made in appealed cases between the filing of the examiner's statement of the grounds of his decision (rule 135) and the decision of the appellate tribunal. After decision on appeal amendments can only be made as provided in rule 140, or to carry into effect a recommendation under rule 139."

Rule 140 of the Patent Office rules provides, among other things, that cases which have been decided by the Board of Appeals "will not be reopened by the primary examiner, except under the provisions of rule 139, without the written authority of the Commissioner, and then only for the consideration of matters not already adjudicated upon, sufficient cause being shown. (Rule 68.)"

It is evident from the Rules of Practice in the United States Patent Office, hereinbefore set forth, and the decisions referred to that, in the event the Board of Appeals is of opinion that a new or amended claim is patentable, it has authority to permit the entry of such new or amended claim and allow the same, subject, however, to the citation of new references or to new grounds of rejection by the Primary Examiner. The entry of such claim, and the allowance thereof, is within the sound discretion of the board, and the board's decision refusing such entry will not be disturbed by this court except in a clear case of abuse of discretion. In re Jerry J. Pondelicek, 47 F.2d 353, 18 C.C. P.A., Patents, 1008.

There is nothing in the decision of the board in the instant case to indicate that it thought the amended claim suggested by counsel for appellant was patentable over the art of record, and we find no error in the board's decision refusing to permit the entry of the amended claim.

We come now to a consideration of the case on its merits.

The appealed claims were rejected by the tribunals of the Patent Office on the disclosure in the patent to Kranz in view of the patents to Barber, Walser et al., and Harrold et al.

The patent to Kranz relates to a printing machine, and particularly to an arrangement for supplying ink to a printing cylinder. In the patentee's arrangement, ink is carried from a fountain roller by means of a ductor roller to a pair of distributing rollers, and from the distributing rollers to "inking rollers" which contact the printing cylinder. The patentee does not disclose an ink drum.

As stated in substance by counsel for appellant, it was the purpose of the patentee Kranz to eliminate the ink drum and the mechanism by means of which ink is transferred from the ink drum to the printing cylinder, and to provide, as hereinbefore stated, mechanism comprising a fountain roller, a ductor roller, a pair of distributing rollers, and a pair of "inking rollers" or contact rollers for delivering the ink directly to the printing cylinder.

It was the view of the Primary Examiner that the disclosure in the Kranz patent was sufficient to negative patentability of the appealed claims in view of the "inking roller driving means" disclosed in the patents to Barber, Walser et al., and Harrold et al.

It is stated in appellant's application that in the prior art there was but one ink feed roller, and that in high speed printing presses "the ductor roller does not have time enough to transfer all of its ink to the ink feed roller. This results in a condition where a considerable portion of the ink taken from the ink supply roll is returned to the roll. I have found that by providing a *pair of ink feed rollers so positioned that the ductor roller will simultaneously contact with both ink feed rollers,* a greater portion of the ink may be taken from the ductor roller by the two ink feed rollers than where only one ink feed roller has been used. I have also found that by providing the pair of ink feed rollers less

ink is required to be taken from the ink supply roll by the ductor roller and that the ink is taken off better from the ductor roller by the use of the said two ink feed rollers and transferred thereby to their ink distribution rollers." (Italics ours.) Appellant further states in his application that by the use of *two ink feed rollers instead of one* the speed of the ink supply roller would be materially decreased, and that the amount of ink supplied to the ink supply roller might also be materially decreased without adversely affecting the proper supply of ink to the printing cylinder.

No claim is made in appellant's application that the ink drum therein disclosed is structurally different, or that it functions in any different manner, from the prior art drums, such, for example, as disclosed in the reference patent to Harrold et al. On the contrary, it plainly appears from appellant's application that the only claimed novel feature in his inking mechanism is the provision for a pair of ink feed rollers (instead of a single ink feed roller) "so positioned that the ductor roller will simultaneously contact with both ink feed rollers."

As stated in the brief of counsel for appellant, appellant was concerned only "with overcoming previous defects in supplying and properly distributing ink from the fountain to the ink *drum* where the ink working-up or conditioning activity take place." (Italics quoted.)

Counsel for appellant contends here, and correctly so we think, that the *ink drum* disclosed in appellant's application does not perform the same function as a *printing cylinder*. Owing to the fact, however, that there is no claimed novelty in appellant's ink drum, that feature in appellant's inking mechanism needs no further discussion.

Counsel for appellant further contends that the tribunals of the Patent Office erred in holding that the *distributing rollers* in the Kranz patent are "the counterpart of appellant's ink feed rollers," and that, although the patentee discloses two rollers, referred to as "distributing rollers," in contact with the ductor roller, the Kranz distributing rollers are unlike appellant's ink feed rollers both in name and in function.

In this connection it is sufficient to say that there is nothing in the record to indicate that the so-called "feed rollers" referred to in appellant's application are unlike the distributing rollers disclosed in the Kranz patent either in structure or in function, nor is there anything of record to indicate that the rollers in the Kranz patent (six in number) which transfer ink from the ink fountain to the printing cylinder differ either in structure or in function from appellant's rollers (also six in number) which transfer ink from the ink fountain to the ink drum.

It is true, as argued by counsel for appellant, that the patentee Kranz does not expressly state that the ductor roller is moved into simultaneous contact with the two distributing rollers. However, the patentee does state that his ductor roller is so positioned and driven that it contacts both distributing rollers, and there is nothing in his disclosure to indicate that his ductor roller is not moved into simultaneous contact with his so-called "distributing rollers."

For the reasons stated, we are of opinion that claim 13, which is the broadest of the appealed claims, is not patentable over the references of record.

Claims 14, 15, and 16 differ from claim 13 in the following respects: Claim 14 contains the limitation that the ink feed rollers are "frictionally driven by their respective ink distribution rollers"; claim 15 contains the limitation that the ink feed rollers are "positively driven" by the ink drums; and claim 16 contains the limitation that the ink feed rollers are operatively connected to the ink drum by a "train of gears."

In rejecting claims 14, 15, and 16, the Primary Examiner stated that the patents to Barber, Walser et al., and Harrold et al. disclose "positive gear drive means for one or more of the inking rollers," and that the "provision of appropriate driving mechanism is a mere mechanical detail suggested by the prior art and within the skill of an ordinary mechanic."

The Board of Appeals concurred in the views expressed by the Primary Examiner.

Counsel for appellant states in his brief that should the court regard claim 13 as patentable over the references, the other appealed claims would also be patentable. It is also stated in the brief of counsel that should claim 13 be held unpatentable over the prior art, "appellant is frank to say that the distinctions between claim 13 and the other claims may well be regarded as insufficient to justify the allowance of the latter," although, it is stated, the "positive drive called for by claims 15 and 16 is of

726

some importance when using certain kinds of ink."

The positive drive, called for broadly in claims 15 and 16, is disclosed in the patent to Harrold et al.

■ We have given careful consideration to the arguments presented here by counsel for appellant, but are unable to hold that the Board of Appeals erred in rejecting the appealed claims on the references of record.

The decision is affirmed.

Affirmed.