49 CCPA
**Application of Reynold HENATSCH.
Patent Appeal No. 6716.**

United States Courts of Customs
and Patent Appeals.
Feb. 13, 1962.

John P. Chandler, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.*

SMITH, Judge.

The Board of Appeals, in its opinion of March 7, 1960, affirmed the rejection by the examiner of claims 11 and 15–21,

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

inclusive, of appellant's application Ser. No. 362,783 filed June 19, 1953, on a sidewalk canopy. The rejection is based on the following references:

| | | |
|---|---|---|
| Hohorst | 405,475 | June 18, 1889 |
| Greenwald | 405,549 | June 18, 1889 |
| Firguson | 1,796,564 | Mar. 17, 1931 |
| Pollard (British) | 482,911 | Apr. 7, 1938 |

Upon applicant's petition for rehearing, this decision was adhered to.

The issue presented is: Do claims 11 and 15–21, inclusive, particularly point out and distinctly claim, as required by 35 U.S.C. § 112, such differences between the subject matter sought to be patented and the prior art as would not be obvious to a person of ordinary skill in the sidewalk canopy art at the time the invention was made?

The issue arises from the following fact situation. The application states that the problem faced by applicant arose by reason of city ordinances which require that sidewalk canopies provided for the protection of patrons during inclement weather be folded back or completely removed during fair weather. As appellant points out in his application:

"* * * unless the owner is willing to risk the penalty for non-compliance with the law, he is required to dismantle the entire canopy, including the framework, and have it stored in some remote place. This requires the efforts of several workmen, with resulting commotion and inconvenience at the entrance."

The invention by which appellant purports to have solved this problem is described in the opening paragraph of his patent specification as:

"* * * a novel canopy which can be quickly retracted into a storage opening in a frame or housing located above the door opening and which can also be quickly moved to extended position for use during inclement weather."

The specification, while asserting that there are several novel features in the various embodiments of the invention disclosed, states, however,

"* * * there are two basic features, which depart completely from the prior art, namely, in providing means for storing the canopy in an area directly over the building entrance, and a structure for ejecting and retracting the complete canopy unit directly from and into this area by means of a movable beam of cantilever-like construction."

The structure disclosed in the specification is an extensible and retractable canopy which, when extended, overhangs the sidewalk from an area above a building entrance to the curb. When retracted, the canopy is stored in a recessed chamber directly above the door. While there are disclosures of several modifications of the invention, all have in common the features of the extensible and retractable canopy having a rigid telescoping frame which is secured above the building entrance and is supported both in its extended and retracted positions from the points of attachment between the canopy and the building. In one embodiment, the canopy is formed by two rigid telescopic sections which, when the canopy is not in use, are telescoped into a rectangular frame mounted within a recess in a building directly above the entrance. A spring-closed door on the front of the frame conceals the front of the frame when the canopy is retracted. When the canopy is extended, its forward end is supported by legs hinged one at each corner of the end of the canopy to permit swinging the legs upwardly into the canopy when it is to be retracted. An extensible beam made up of a plurality of slidably connected

beams supports the canopy. A cable and pulley arrangement is provided for extending and retracting the canopy.

In a second embodiment a rack and pinion drive is used instead of the cable and pulley arrangement for extending and retracting the canopy. In a third form, only one canopy section is provided. A fourth embodiment, similar to the first embodiment, comprises three movable canopy sections for use where two sections are insufficient. A fifth embodiment combines a single movable canopy section with a canvas canopy section.

Claim 19 has been presented to us as a representative claim on the basis that if this claim is found to be allowable, the other appealed claims also are allowable. Claim 19 is as follows:

"The combination with a building having storage space directly above the entrance of means for providing overhead covering of rigid framework construction from said storage space to a point near the curb directly in front of it, of suitable width to afford protection from the elements to vehicular passengers using the building, and means for ejecting and retracting said overhead covering reciprocally from and to said storage [space] in a substantially horizontal manner, while supporting it at proper height and retaining it in contact with the storage and under control and in proper alignment at all times."

The references relied upon in rejecting the claims may be summarized as follows:

The Hohorst patent, No. 405,475, discloses an awning extending across the front of a building above both a door and a window. The awning is extended and retracted along stationary ropes supported at one end by posts.

The Greenwald patent, No. 405,549, discloses an awning "for doors and windows" which is retractable into an enclosure, or case, having a hinged front mounted above a door or window to provide a shelter for the awning when it is retracted.

The Firguson patent, No. 1,796,564, discloses a retractable awning or canopy comprising telescopic metallic sections above either a door or a window opening in a building wall.

British patent No. 482,911 to E. Pollard & Co. Limited and Harold Edward Pollard is the reference principally relied upon to support the rejection. It discloses an awning retractable into a recess in a building formed in part by a ceiling of the building. The embodiment shown comprises a canvas awning strip, the inner end of which is carried by a roller on which it is wound when the awning is retracted. The other end of the canvas strip is attached to the outer ends of a pair of telescopic arms forming a telescoping rigid frame which is retractable into the recess. In extending or retracting the awning, the rigid frame is guided by an inclined track which is mounted in the recess and is slidably connected with the inner ends of the telescopic arms.

In determining whether the appealed claims are allowable, we shall first consider the language of the claims. A considerable amount of what seems like unnecessary confusion has crept into this case by reason of the reference by the board in its opinion of May 17, 1960 to 35 U.S.C. § 112 and appellant's argumentative assertions that the form of claim 19 is permitted by this section. We do not construe the board's opinion of May 17, 1960 as holding that the *form* of claim 19 is not proper. Instead, this opinion, when read with the board's earlier opinion of March 7, 1960, makes it clear to us that the ground of rejection is that claim 19 as presented reads on the prior art. As stated by the board in its opinion of March 7, 1960:

" * * * Reading this claim on Pollard, the reference shows a building having a storage space directly above an entrance. Pollard does not specifically state whether his 'awn-

ing or sun-blind or the like' is used over an entrance for persons or for light, but the claim language is similarly broad in identifying only 'an entrance' to the building. However, since the prior art shows awnings over 'an opening that may be for a window or a door,' Firguson, page 1, lines 77 to 82, and over both a door and a closely adjacent window as in Hohorst, we do not believe that the use of an awning or canopy over a doorway as disclosed in the instant case is a patentable distinction."

Continuing, claim 19 calls for:

"\* \* \* means for providing overhead covering of rigid framework construction from said storage space to a point near the curb directly in front of it, of suitable width to afford protection from the elements to vehicular passengers using the building, \* \* \*

"The canvas material as carried by the beams 14, 15, 4 in Pollard is considered to be an 'overhead covering of rigid framework construction.' The outward extent to the curb is a matter determined by the distance of the curb from the front of the building. Since it is admittedly well known to extend an awning or canopy to the curb, see appellant's brief, sketch, page 3 and lines 5 to 9 from bottom of Page 6, we do not find a patentable distinction over Pollard in this recitation because the awning therein could, without involving patentable invention, extend to the curb. The Pollard awning or canopy responds quite fairly to the 'suitable width' recitation since ordinary design requirements, as seen in Hohorst for example, would dictate that the awning or canopy would be at least as wide as the doorway."

Lastly, this claim, 19, requires:

"\* \* \* means for ejecting and retracting said overhead covering reciprocally from and to said storage in a substantially horizontal manner, while supporting it at proper height and retaining it in contact with the storage and under control and in proper alignment at all times.

"Pollard provides mechanism actuated by the hand crank 11 'for ejecting and retracting said overhead covering reciprocally' as recited in the claim. The claim delimits the horizontal path by requiring only a 'substantially horizontal' path. The path of the roof section in Pollard is, in our opinion, 'substantially' horizontal and we fail to find a patentable distinction in this recitation. We believe it is but a common design requirement that the overhead covering in Pollard be supported 'at proper height' for its intended use. And finally, the overhead covering in Pollard is, in our opinion, clearly retained in contact with the storage space and in proper alignment at all times."

■ We agree with the Board's analysis of claim 19 and agree with the Board that the claim reads on Pollard. While the last paragraph of 35 U.S.C. § 112[1] is intended to permit an applicant to express an element in a claim for a combination as a means for performing a specified function without the recital of structure in support thereof, it does not permit an applicant to avoid the requirement imposed by the second paragraph thereof, that the claims shall particularly point out and distinctly claim the subject matter which applicant regards as his invention. While the last paragraph of this section is intended to allow a greater liberality in

1. The last paragraph of 35 U.S.C. § 112 is:
"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

the *form* of claims, "The requirement in the second paragraph of section 112 * * * has not been at all diminished by the addition of the third paragraph; the latter paragraph must be read in the light of the first and second paragraphs and given an interpretation consistent with their clear meaning * * *." In re Lundberg, 44 CCPA 909, 244 F.2d 543, 547.

Appellant urges that the "means for providing overhead covering of rigid framework construction" as specified in claim 19 distinguishes over the Pollard reference. Construing the "means" specified in appellant's claim 19 to cover the embodiments described in his specification in connection with figures 24–27, on which it reads, in which the "roof coverings may be made of canvas stretched lightly over light frame structure," we find that Pollard also discloses a canopy or awning which provides an "overhead covering of rigid framework." Claim 19 so construed reads directly thereon. We are, therefore, unable to find in this recital of "means" for performing the stated function anything which distinguishes from the Pollard disclosure.

The other "means" recited in claim 19 is for performing the function of "ejecting and retracting said overhead covering reciprocally from and to said storage in a substantially horizontal manner." Appellant states that this distinguishes his invention over Pollard whose awning opens outwardly and downwardly and retracts inwardly and upwardly. In our opinion the board was correct in interpreting the language "in a substantially horizontal manner" broadly and in accordance with the accepted meaning of the terms used. We find no basis in the specification for giving these terms the restricted and specific meaning now urged by appellant as distinguishing the invention as claimed in claim 19 over the Pollard disclosure.

Claims 20 and 21 are of the same "means plus function" type as claim 19. While differing slightly in wording, their general form and content is the same as that of claim 19. For the reasons previously discussed as to claim 19, we find them to read equally well on the prior art and on applicant's disclosed structure. We repeat, this objection is not based on the *form* of these claims. We think paragraph 3 of section 112 should at all times be liberally construed to permit applicants the widest possible choice of claim *form*. But this requires that great care and skill be exercised to be certain that such claims particularly point out and distinctly claim the subject matter which the applicant regards as his invention so as to distinguish it from the prior art.

Claim 11 was rejected by the examiner as unpatentable over Pollard in view of Greenwald. Appellant's structure, as claimed in claim 11 and as shown, inter alia, in figure 1, features a rigid extensible cantilever-type beam which enables appellant to support a rigid and extensible overhead coverage. Claim 11 specifically defines this novel structure. It was the position of the board that the language used in claim 11, "a plurality of beam sections," would include the Pollard construction since members 14, 15 and track 4 of Pollard constitute "a plurality of beam sections." Claim 11 requires the beam sections to be retained "in aligned relationship." Construing this phrase in the light of applicant's disclosure, it is clear that it requires that the plurality of beam sections should be parallel in all planes. Fig. 3 of Pollard shows track 4 in a non-aligned relationship with the member 15. We, therefore, do not agree with the board that track 4 of Pollard should be considered as one of the "plurality of beam sections" called for in claim 11 which according to the claim are retained in "aligned relationship." In addition, claim 11 requires that one beam section is secured to the frame. This is not shown in Pollard, since track 4 of Pollard which is secured to the building is not one of the "plurality of beam sections" as called for by claim 11. Thus member 15 of Pollard, the only element which responds to the "plurality of beam sec-

tions" required to meet claim 11, is slidably connected to track 4 and is not "secured to the frame" as further required by claim 11.

We think that claim 11, when read in the light of appellant's specification, defines a structure not suggested by Pollard to one of ordinary skills in this art. We hold, therefore, that the board erred in affirming the examiner's rejection of claim 11.

Appellant questions what he refers to as the "en bloc" rejection of claims 15 to 21 by the examiner and board. However, appellant has not specifically argued the allowability of each claim. We note that claims 15 through 18 include limitations to the structure of appellant's novel extensible supporting beam while claims 19–21 inclusive do not. We believe the examiner should have acted upon claims 15 through 18 separately from claims 19–21 in order to comply with the requirement of the last sentence of par. 707.07(d), Manual of Patent Examining Procedure, that:

A plurality of claims should never be grouped together in a common rejection, unless the rejection is equally applicable to all claims in the group.

Despite the fact that the appellant, the examiner, and the board have all failed to recognize this difference in the claims,

we do not think that we should compound this omission by treating the rejection of claims 15–18 *en bloc* with claims 19–21 inclusive.

When claims 16, 17 and 18 are separately considered, we find that they structurally define appellant's novel extensible beam section for the reasons pointed out in our discussion of claim 11, supra, and in addition contain further limitations over claim 11. We think, therefore, claims 16, 17 and 18 were erroneously rejected.

Since claim 15 recites the novel and unobvious beam structure not suggested by Pollard, we do not think the claim calls for an "obvious" improvement over Pollard and we reverse this ground of rejection.[2]

For the foregoing reasons, we *affirm* the rejection of claims 19–21 inclusive and *reverse* the rejection of claims 11, and 15–18 inclusive.

Modified.

WORLEY, Chief Judge, dissenting, with whom KIRKPATRICK, Judge, joins.

I am unable to see where appellant has done anything more than would be expected of one of ordinary skill in this particular field. I would affirm the action of the board as to all claims.

2. We note in passing that the *combination* defined in claim 15 appears to be of that class considered in In re Tibony, 44 CCPA 801, 241 F.2d 953, and in In re Allatt, 28 CCPA 1367, 121 F.2d 545, in which this court pointed out that improvement of one element [the extensible beam structure] of a combination did not establish the coaction required to produce a new combinational effect. See also, Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 and Rogers v. Alemite Corp., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. Since no such ground of rejection is before us, we are not passing here on this issue.